IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| JANE DOE,<br> Plaintiff,<br><br>v.<br><br>ANNE ARUNDEL COUNTY,<br>CHRISTOPHER KLEIN,<br>AMANDA TABOR,<br>JOSEPH OLUWAFEMI OSIBERU,<br>TAJUDEEN OLAROTIMI DURODOYE, AND<br>JOHN DOES 1-4,<br> Defendants. | Case No. |

## COMPLAINT

### INTRODUCTION

1. Plaintiff Jane Doe[1] was repeatedly sexually assaulted and harassed by two different Anne Arundel County correctional officers in 2022 while she was held at the Jennifer Road Detention Center, in Annapolis, Maryland. The individual officers responsible, named as individual Defendants herein, later admitted to sexual assault, but their crimes were also the result of multiple prior systemic failures of the organizational leadership of the County and its Jennifer Road Detention Center to prevent such foreseeable risks.

2. Jane Doe brings this action to vindicate her rights under the Fourth, Fifth, and Eighth Amendments to the United States Constitution, the Maryland Constitution, and Maryland law.

---

[1] "Jane Doe" is a pseudonym for Plaintiff, whose name will be revealed in a filing submitted under seal, pursuant to Plaintiff's Motions for Use of a Pseudonym and to File Under Seal, being separately filed.

## Jurisdiction and Venue

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## Prerequisites to Suit Completed

5.      Jane Doe, through her counsel, sent timely notice on or about November 11, 2022 of her claims, by certified mail, return receipt requested, to the Office of the Anne Arundel County Attorney, and that Office has acknowledged receipt thereof.

## Parties

6.      Plaintiff Jane Doe is a citizen of the District of Columbia. During the events described in this complaint, she was held at the Jennifer Road Detention Center.

7.      Defendant Anne Arundel County, Maryland is the legal entity responsible for the operations of the Anne Arundel Department of Detention Facilities, including the Jennifer Road Detention Center.

8.      Defendant Christopher Klein is the Superintendent of the Anne Arundel County Department of Detention Facilities. He is the managing official and appointing authority for the Department. He is authorized to promulgate all policies, rules, and regulations governing the Department's operations. He is sued in his individual and official capacities.

9.      Defendant Correctional Facility Administrator Amanda Tabor serves as the warden of the Jennifer Road Detention Center. She is responsible for overseeing operations in

that detention facility, and is responsible for enforcing directives therein. She is sued in her individual and official capacities.

10. Defendant Officer Joseph Oluwafemi Osiberu was at all relevant times a correctional officer employed by Anne Arundel County and stationed at the Jennifer Road Detention Center. He is a citizen of the State of Maryland. On December 9, 2022, Osiberu pleaded guilty to the sexual assault described below. He is sued in his individual and official capacities.

11. Defendant Officer Tajudeen Olarotimi Durodoye was at all relevant times a correctional officer employed by Anne Arundel County and stationed at the Jennifer Road Detention Center. He is a citizen of the State of Maryland. On April 25, 2023, Durodoye pleaded guilty to the sexual assaults described below. He is sued in his individual and official capacities.

12. Defendant John Does 1-4 are employees of Anne Arundel County with responsibilities for the safety and security of prisoners at the Jennifer Road Detention Center. Their names are currently unknown. They are sued in their individual and official capacities.

### Factual Allegations

**Background Information**

13. The Jennifer Road Detention Center (JRDC) is one of Anne Arundel County's two jails. Among other special populations, it houses those men and women who need special housing for mental health care.

14. Sexual abuse has long been known both to corrections professionals and the general public as a common occurrence for women in American prisons and jails.

Additionally, inmates with mental health disabilities have also long been understood to be especially vulnerable to sexual abuse.

15. To address this well-known reality, in September 2003, the United States Congress unanimously passed the Prison Rape Elimination Act (PREA). The aim of the Act is to create "zero tolerance" for carceral sexual assault by using a variety of tools or mechanisms including data collection; grants to the states; technical assistance to the states to improve their practices; research; the development of national standards; and the diminution of federal criminal justice assistance to states who fail to comply with the standards.

16. Any correctional professional, including each of the Defendants, is familiar with the requirements of PREA. In fact, Anne Arundel County's own website has a page about PREA, which states:

> PREA establishes national standards for the detection, prevention, reduction and punishment of sexual assault in correctional settings and applies to all federal, state and local prisons, jails, police lock-ups, private facilities and community settings such as a [sic] residential facilities.
>
> The Anne Arundel County Department of Detention Facilities (AACDDF) has a zero-tolerance policy regarding sexual assault/rape and sexual harassment of inmates, offenders, detainees as crime victims. The Department will immediately respond to any and all allegations, provide a full investigation along with pursue disciplinary action with referral for prosecution to those who perpetrate in such acts.

https://www.aacounty.org/detention-facilities/about-detention-facilities/prison-rape-elimination-act (last visited Nov. 8, 2023).

17. PREA standards for prisons and jails include requirements such as requiring inmate education at intake about the right to be free from sexual abuse; requiring appropriate staffing in line with accepted national correctional professional standards; employee training on how to prevent and detect sexual abuse; preventing retaliation against inmates who are

4

victims of sexual abuse; and comprehensive professional audits of the implementation of these standards every three years, which shall be published on the agency's website.

18. Anne Arundel County, Superintendent Klien, Administrator Tabor, and Does 1-4 have yet to fully implement these standards at the Jennifer Road Detention Center.

19. Notably, among other failures, Defendants have made the choice to never have a PREA audit, which would have disclosed (and allowed for the correction of) past substantive failures.

**The Sexual Assaults**

20. Jane Doe was held at the Jennifer Road Detention Center from approximately January 2022 until July 2022.

21. Because of her known and recognized mental health disabilities, Jane Doe was placed on JRDC's mental health unit, for close observation and care.

22. On information and belief, at most times, and pursuant to policy, procedure and/or custom, JRDC regularly assigned only one officer to JRDC's mental health unit, contrary to accepted national correctional standards.

23. On information and belief, at most times, and pursuant to policy, procedure and/or custom, JRDC regularly also assigned a single male correctional officer to work on JRDC's mental health unit, which included female inmates such as Jane Doe, contrary to accepted national correctional standards.

24. For much of Jane Doe's time at JRDC, the assigned officer in its mental health unit was Officer Tajudeen Olarotimi Durodoye. Also assigned to that unit at certain points in time was Officer Joseph Oluwafemi Osiberu.

25. While Jane Doe was so detained, at least both of these officers openly engaged in a campaign of sexual harassment, sexual abuse, and ultimately sexual assaults against Jane Doe.

26. This campaign of abuse included, but was not limited to: verbal sexual harassment, threats of placement in solitary confinement if Jane Doe resisted or refused, commands to display her naked body, sexual groping, picture-taking, and digital-vaginal penetration.

27. From March through at least May, 2022, Officer Durodoye regularly approached Jane Doe's cell. On numerous occasions over this extended period of time, he would order her to remove her clothing and would fondle her breasts, nipples, buttocks, and vulva. While in the officers' station, Durodoye would also tell Jane Doe to masturbate with her legs open and facing toward the in-cell camera. On at least five different occasions, Durodoye digitally penetrated Jane Doe's vagina.

28. On June 5, 2022, at approximately 12:45 am, Officer Osiberu also approached Jane Doe's cell. Osiberu told Jane Doe she was beautiful and told her to pull down her pants and back up to the door. Osiberu then reached into her cell through the door slot and fondled her buttocks and vulva.

29. The aforementioned sexual abuse was open and notorious enough that other inmates commented on it and even sent Jane Doe written notes confirming what they were seeing.

30. The abuse was also captured on video by the Jennifer Road Detention Center's own surveillance system. However, the surveillance system was not adequately monitored.

31. John Does 1-4, whose names are not known to Plaintiff, included employees of Jennifer Road Detention Center responsible for monitoring video feed, supervision of unit-stationed officers, and investigating and responding to information about staff misconduct.

32. John Does 1-4 utterly failed to carry out their assigned duties.

33. For a period of many months, none of the supervisory staff of the Jennifer Road Detention Center intervened to correct this open and notorious misconduct, which instead was allowed to continue and fester because of the Defendants' deficient policies, procedures and customs.

**The Aftermath**

34. When the abuse was finally uncovered, the Jennifer Road Detention Center, acting through the Defendants, did not, as required by policy and PREA regulations, provide Jane Doe with counseling or protect her from retaliation from other officers and employees.

35. Mental health staff also failed to preserve Jane Doe's confidentiality, instead confirming to various other inmates that she had been sexually assaulted by staff.

36. Jane Doe thereafter also suffered from retaliation and ridicule from certain members of Jennifer Road Detention Center's correctional staff and others while detained.

37. As a result, Jane Doe has suffered extreme injuries, including mental and emotional harm so severe that she temporarily lost a will to eat.

38. Jane Doe continues to suffer mentally and emotionally.

## COUNT I
### Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983
### (Against Anne Arundel County and all Defendants in their Official Capacities)

39. The sexual assaults suffered by Jane Doe were the result of both affirmative decisions and deliberatively indifferent failures of Anne Arundel County and its employees.

40. First, the County, through the actions of policymakers Defendant Klein and Defendant Tabor, only assigned one security officer – a male guard - to the mental health unit where Jane Doe was held.

41. Had more than one officer been assigned to that unit at a time, Defendants Osiberu and Durodoye would not have been able to so easily abuse Jane Doe sexually with unobserved impunity.

42. Second, the County, through the actions of policymakers Defendant Klein and Defendant Tabor, failed to ensure that surveillance cameras were properly monitored, as a result of deficient and tortious policies, procedures and customs. The County did so deliberately indifferent to the knowledge that lack of observance would allow unconstitutional actions, such as sexual abuse, to occur and even continue for months on end, unchecked.

43. Third, the County, through the actions of policymakers Defendant Klein and Defendant Tabor, failed to supervise its employees, Defendants Osiberu and Durodoye properly. Proper supervision would have included not only day-to-day supervision but also PREA audits and other accepted correctional standards for making sure that sexual abuse was not tolerated. The County did so with deliberate indifference to the harms that could result from improper staff supervision. Had these Defendants been properly supervised, they would not have had the opportunity, and continued opportunities, to sexually abuse Jane Doe.

44. Finally, the County had a open custom and practice of allowing sexual harassment and abuse. This culture of abuse was so notorious that other inmates were able to

observe Jane Doe's harassment and send her written notes about it. Yet, no staff member or supervisor took any action or even commented on the open and notorious abuse.

45. As a direct and proximate result of Defendants' violation of Plaintiff's constitutional rights as noted above, Plaintiff suffered physical injury and severe mental anguish and emotional trauma, for which she deserves fair compensation.

### COUNT II
### Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983
### (Against Defendants Officer Durodoye and Officer Osiberu)

46. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

47. Defendants Officer Durodoye's and Officer Osiberu's conduct, while acting as uniformed Anne Arundel County correctional officers, constituted prohibited sexual abuse and cruel and unusual punishment of Jane Doe. Such conduct was outrageous, reckless, malicious, lascivious and sadistic, and was engaged in for the very purpose of causing harm which constitutes cruel and unusual punishment.

48. Any correctional officer in Officer Durodoye and Officer Osiberu's position would have reasonably known that sexual contact with an inmate, especially an inmate in a mental health unit, who has been placed in the care and control of the jailer was unreasonable, unjustified, and unconstitutional.

49. Defendants Officer Durodoye and Officer Osiberu recklessly, willfully, wantonly, maliciously, and/or intentionally sexually assaulted Jane Doe, with callous disregard for Plaintiff's right to be free from cruel and unusual punishment, as guaranteed under the Eighth Amendment to the United States Constitution, as applied to Jane Doe

through the Fourteenth Amendment to the United States constitution, and was committed under the color of state law.

50. As a result of their unlawful sexual contact with Jane Doe, at a time when they also knew she had been placed into a special mental health unit, Defendants Officer Durodoye and Officer Osiberu caused pain, physical injury, mental anguish, and emotional trauma to Jane Doe, for which she deserves fair compensation.

51. Punitive damages are also properly awardable against Defendants Officer Durodoye and Officer Osiberu, both in their individual and official capacities, and are hereby also claimed as a matter of federal common law. *Smith v. Wade*, 461 U.S. 30 (1983).

### COUNT III
### Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. §1983
### (Against Defendants Anne Arundel County, Superintendent Klein, Administrator Tabor, and Does 1-4)

52. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

53. These Defendants failed to adequately train and supervise Defendants Officer Durodoye and Officer Osiberu and other staff at the Jennifer Road Detention Center.

54. These failures were a direct and proximate cause of the sexual abuse Jane Doe suffered.

55. These Defendants' failures happened, despite their knowledge that adequate training and supervision was required, and that such lapses may lead to sexual assaults.

56. As a result of these failures, Jane Doe was left vulnerable to the sexual assaults she suffered.

57. Jane Doe has suffered pain, physical injury, mental anguish, and emotional trauma as a direct and proximate result of these failures, for which she deserves fair compensation.

### Count IV
### State Law Claim for Violation of Article 25 of the Maryland Declaration of Rights
### (Against All Defendants)

58. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

59. The events described herein constitute a violation of Jane Doe's rights under Article 25 of the Maryland Declaration of Rights to be free of cruel and unusual punishment.

60. Jane Doe has suffered pain, physical injury, mental anguish, and emotional trauma as a direct and proximate result of these violations of her rights, for which she deserves fair compensation.

### Count V
### State Law Claim for Assault and Battery
### (Against Officer Osiberu, Officer Durodoye, and Does 1-4)

61. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

62. At the time of these sexual assaults, all these Defendants were acting within the scope of their employment.

63. Defendants Officer Durodoye and Osiberu had duties to protect Jane Doe from sexual assault and battery, but instead engaged in sexual activities themselves which constituted assault and battery under Maryland law.

64. As a direct and proximate result of such assault and battery by Defendants Officer Durodoye and Officer Osiberu, Jane Doe has suffered pain, physical injury, mental anguish, and emotional trauma, for which she deserves fair compensation.

## Count VI
### State Law Claim for Negligent Supervision and Discipline
### (Against Superintendent Klein, Administrator Tabor, and Does 1-4)

65. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

66. Defendants Superintendent Klein, Administrator Tabor, and Does 1-4 all had duties to appropriately and consistently supervise the line staff at the Jennifer Road Detention Facility to ensure that they were not violating the rights of the people entrusted to their care.

67. These duties included, but are not limited to, adequately training both staff and inmates on PREA, adequately training both staff and inmates how to report sexual misconduct, adequately following up on such complaints, adequately monitoring surveillance video, adequately performing unannounced supervisory rounds, and adequately staffing the mental health unit.

68. These duties further included making sure that Jane Doe had access to the counseling services she needed after any assaults, making sure that her privacy rights were protected, and making sure that she was protected against retaliation.

69. By failing to adequately perform their duties in this regard, these Defendants left Jane Doe unprotected against the sexual assaults and caused her additional mental and emotional suffering in their aftermath.

70. As a direct and proximate result of these failures, Jane Doe has suffered pain, physical injury, mental anguish and emotional trauma, for which she deserves fair compensation.

## Count VII
### State Law Claim for Intentional Infliction of Emotional Distress
### (Against Officer Osiberu and Officer Durodoye)

71. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

72. Defendants Officer Durodoye and Osiberu repeatedly sexually assaulted Jane Doe, and thereby intentionally sought to inflict emotional distress on her.

73. Sexual assault of an incarcerated prisoner is extreme and outrageous, especially when that prisoner is also known to be held in a mental health unit.

74. As a direct and proximate result of these actions, Jane Doe suffered and continues to suffer from severe emotional distress, for which she deserves fair compensation.

75. Punitive damages are also properly awardable on this claim against Defendants Officer Durodoye and Officer Osiberu, both in their individual and official capacities.

### Request For Relief

Plaintiff respectfully requests that this Court:

(a) Assume jurisdiction over this action;

(b) Declare that the acts and omissions described herein violated Plaintiff's rights under the United States Constitution and Maryland's Declaration of Rights;

(c) Enjoin Defendants from engaging in any acts of retaliation against Plaintiff;

(d) Enter judgment for Plaintiff against Defendants for all damages allowed by law, including:

  (i) Compensatory damages for the full value of Plaintiff's right to freedom from cruel and unusual punishment, physical injuries, pain and suffering, mental anguish and emotional trauma and distress;

  (ii) Nominal damages;

  (iii) Punitive damages; and

  (iv) Reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988 and as otherwise allowed by law; and

(e) Order any other relief this Court may deem just and proper.

**Demand for Jury Trial**

Plaintiff demands a trial by jury on all counts so triable.

Dated: December 20, 2023                    Respectfully submitted,

By: /s/ Gregory S. Smith
U.S. District Court (D. Md. Bar No. 17358)
Law Offices of Gregory S. Smith
913 East Capitol Street, SE
Washington, DC  20003
Tel:  (202) 460-3381
Fax: (202) 330-5229
gregsmithlaw@verizon.net

By s/*Deborah M. Golden*
Deborah M. Golden (D. Md. Bar No. 18657)
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Tel: 202-630-0332
Fax: 202-217-3653
dgolden@debgoldenlaw.com