## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JANE DOE,

        *Plaintiff,*

    v.

ANNE ARUNDEL COUNTY, *et al.,*

        *Defendants.*

Civil No.: 1:23-cv-03451-JRR

## <u>MEMORANDUM OPINION</u>

The court has before it the following motions: Defendants Christopher Klein and Amanda Tabor's Motion to Dismiss or in the Alternative for Summary Judgment ("ECF No. 23; "County Defendants' Motion"), Defendant Anne Arundel County, Maryland's Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 24; "County Motion"), and Defendants Joseph Oluwafemi Osiberu[1] and Tajudeen Olarotimi Durodoye's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 25; "Officer Defendants' Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, all motions shall be construed as motions to dismiss; and the County Defendants' Motion will be granted, the County's Motion will be granted, and the Officer Defendants' Motion will be granted in part and denied in part.

---

[1] Osiberu did not initially join Durodoye in the filing of his motion, but subsequently filed a "Notice of Joinder and Adoption of Defendant Durodoye's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (ECF No. 37.) The notice identifies the commonalities between Officer Defendants and references Osiberu's previously-filed affidavit, which asserts that his "sexual contact with Plaintiff was consensual." *Id.* Plaintiff responded to incorporate her Omnibus Opposition at ECF No. 33 as to Osiberu. (ECF No. 41.)

I.    **BACKGROUND**[2]

On December 21, 2023, Plaintiff Jane Doe initiated this action against Defendants Anne Arundel County (the "County"), Defendants Christopher Klein and Amanda Tabor ("County Defendants"), Defendants Joseph Oluwafemi Osiberu and Tajudeen Olarotimi Durodoye ("Officer Defendants"), and Defendants John Doe 1 through 4 ("John Doe Defendants"). (ECF No. 1; the "Complaint.") Plaintiff's action arises from repeated sexual abuse at the hands of Officer Defendants while she was detained at the Jennifer Road Detention Center ("JRDC") in 2022. *Id.* ¶ 1.

Klein is the Superintendent of the County's Department of Detention Facilities; he is "the managing official and appointing authority for the Department." *Id.* ¶ 8. Tabor is the warden of JRDC, a jail located in Anne Arundel County, Maryland. *Id.* ¶¶ 6, 9, 13. "She is responsible for overseeing operations [at JRDC and] . . . for enforcing directives therein." *Id.* ¶ 9. Osiberu and Durodoye were both correctional officers employed by the County and stationed at JRDC. *Id.* ¶¶ 10–11. John Doe Defendants are County employees responsible for prisoner safety at JRDC. *Id.* ¶ 12.

A.  **Plaintiff's Detention and Sexual Assault**

From approximately January to July 2022, Plaintiff was held at JRDC, specifically in its mental health unit due to her "known and recognized mental health disabilities." *Id.* ¶¶ 6, 13, 20–21. Upon Plaintiff's information and belief, and "pursuant to policy, procedure, and/or custom," "JRDC regularly assigned only one officer," usually male, to the mental health unit. *Id.* ¶¶ 22–23. For much of Plaintiff's time at JRDC, the assigned officer in the mental health unit was Defendant Durodoye; Defendant Osiberu was also assigned to the unit "at certain points." *Id.* ¶ 24.

---

[2] For purposes of resolving the motions, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

During Plaintiff's detention at the JRDC mental health unit, Officer Defendants "openly engaged in a campaign of sexual harassment, sexual abuse, and ultimately sexual assaults against" her. (ECF No. 1 ¶ 25.) Such conduct included "verbal sexual harassment, threats of placement in solitary confinement if [Plaintiff] resisted or refused, commands [for Plaintiff] to display her naked body, sexual groping, picture-taking, and digital-vaginal penetration." *Id.* ¶ 26. Specifically, Plaintiff alleges that between March and May 2022, Durodoye "regularly approached [Plaintiff's] cell" and "[o]n numerous occasions" ordered her "to remove her clothing and would fondle her breasts, nipples, buttocks, and vulva," and, separately, "to masturbate with her legs open and facing toward the in-cell camera." *Id.* ¶ 27. "On at least five different occasions, Durodoye digitally penetrated [Plaintiff's] vagina." *Id.* On June 5, 2022, Osiberu approached Plaintiff's cell, told her she was beautiful, and ordered her "to pull down her pants and back up to the door" whereupon he "reached into her cell through the door slot and fondled her buttocks and vulva." *Id.* ¶ 28.

Plaintiff avers that the sexual abuse described above "was open and notorious enough that other inmates commented on it." (ECF No. 1 ¶ 29.) The abuse was also captured on JRDC's surveillance system video that was "not adequately monitored." *Id.* ¶ 30. In particular, Plaintiff alleges that John Doe Defendants are unknown JRDC employees who "utterly failed to carry out their assigned duties," specifically based on their monitoring of the video feed and in their supervision of unit-stationed officers and investigating staff misconduct. *Id.* ¶¶ 31–32. Ultimately, "none of the supervisory staff of the [JRDC] intervened to correct this open and notorious misconduct, which instead was allowed to continue and fester because of the Defendants' deficient policies, procedures and customs." *Id.* ¶ 33.

As a result of the sexual abuse, Plaintiff "has suffered extreme injuries, including mental and emotional harm so severe that she temporarily lost a will to eat." (ECF No. 1 ¶ 36.) Moreover,

once the abuse was uncovered, JRDC did not provide Plaintiff with counseling or protect her from retaliation from other officers or employees. *Id.* ¶ 34. JRDC mental health staff further failed to preserve her confidentiality and instead confirmed to various inmates that Plaintiff had been sexually assaulted by staff, resulting in additional retaliation and ridicule from correctional staff and others at JRDC. *Id.* ¶¶ 35–36.

### B. The Prison Rape Elimination Act ("PREA")[3]

Plaintiff's Complaint offers extensive information about PREA, a statute Plaintiff asserts promotes "zero tolerance" for sexual assault of incarcerated individuals. (ECF No. 1 ¶ 15.) By way of background, "Congress passed the PREA to, *inter alia*, 'establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States' and 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Johnson v. Robinette*, 105 F.4th 99, 107 (4th Cir. 2024) (quoting 34 U.S.C. §§ 30302(1), (7)).

Under PREA, "sexual fondling" is defined as "the touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification." 34 U.S.C. § 30309(11). Similarly, the PREA national standards define "sexual abuse" to include, *inter alia*, "penetration of the . . . genital opening, however slight, by a hand, finger . . . that is unrelated to official duties or where the staff member . . . has the intent to abuse, arouse, or gratify sexual desire"; "[a]ny other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire"; and "[v]oyeurism by a staff member . . . ." 28 C.F.R. §

---

[3] Plaintiff acknowledges that PREA does not create an individual cause of action and relies upon it to the extent it "reflects society's evolving standards of decency." (ECF No. 33 at p. 9, 11.)

115.6.  Such sexual abuse includes any of the aforementioned acts "with or without consent of the inmate, detainee, or resident." *Id.*

Sexual harassment, in turn, refers to "[r]epeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member . . . , including . . . sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures," as well as "[v]oyeurism by a staff member," meaning "an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties . . . ." *Id.*

Plaintiff contends that, pursuant to PREA, prisons and jails are required to provide inmate education at intake about "the right to be free from sexual abuse." *Id.* ¶ 17.  Moreover, Plaintiff avers that PREA standards include "appropriate staffing in line with accepted national correctional professional standards," "employee training on how to prevent and detect sexual abuse," retaliation prevention for inmates who are victims of sexual abuse, and "comprehensive professional audits of the implementation of these standards every three years." *Id.*  Plaintiff alleges that the County, County Defendants, and John Doe Defendants have not "fully implement[ed]" PREA standards at JRDC and, notably, have never conducted a PREA audit. *Id.* ¶ 28.

## C.  Procedural History

Both Officer Defendants were criminally charged for their conduct involving Plaintiff.[4] (ECF No. 1 ¶¶ 10–11.)  Osiberu was charged by information with Correction Inmate/Sex Offense, Second Degree Assault by a State Correctional Facility Employee, Fourth Degree Sex Offense, and Misconduct in Office.  (ECF No. 24-8 at pp. 7–9.)  On December 9, 2022, he pled guilty to Charge No. 1, Correction Inmate/Sex Offense.  (ECF No. 1 ¶ 10.)  Durodoye was charged by information with twenty counts, including Correction Inmate/Sex Offense, Fourth Degree Sex

---

[4] As discussed more fully below, the court takes judicial notice of matters in the public record.

Offense, Second Degree Assault, and Misconduct in Office.  (ECF No. 25-3.)  On April 25, 2023, he pled guilty to Charge No. 5, Correction Inmate/Sex Offense and Charge No. 8, Misconduct in Office.  (ECF No. 1 ¶ 11; ECF No. 25-2.)

Plaintiff initiated this action on December 21, 2023.  (ECF No. 1.)  In her Complaint, Plaintiff asserts the following counts:[5]

> Count I: Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983 against the County and all Individual Defendants in their Official Capacities;
>
> Count II: Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983 against Officer Defendants;
>
> Count III: Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983 against the County, County Defendants, and John Doe Defendants;
>
> Count IV: Violation of Article 25 of the Maryland Declaration of Rights against all Defendants;
>
> Count V: Assault and Battery against Officer Defendants and John Doe Defendants;
>
> Count VI: Negligent Supervision and Discipline against County Defendants and John Doe Defendants;
>
> Count VII: Intentional Infliction of Emotional Distress ("IIED") against Officer Defendants.

(ECF No. 1 ¶¶ 39–75.)  Defendants, through their respective motions, seek dismissal or, alternatively, summary judgment, on all claims.  (ECF Nos. 23, 24, 25, 37.)

---

[5] Although Plaintiff states that she brings this action under the Fourth, Fifth, and Eighth Amendments (ECF No. 1 ¶ 2), her asserted claims concern cruel and unusual punishment in violation of the Eighth Amendment, a Maryland constitutional claim that is analyzed *in pari materia* with the Eighth Amendment, and Maryland tort claims.

## II.     LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(d)

All Defendants bring motions to dismiss or, alternatively, for summary judgment.  "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)."  *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)).  Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same).  "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary."  *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion."  *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013).

"First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).   Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.   "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)).

Here, all Defendants seek summary judgment in the alternative and attach exhibits in support of their respective motions.   This case is in its infancy; discovery has not yet commenced. Further, Plaintiff, through counsel (Gregory Stuart Smith, Esquire), submits a Rule 56(d) affidavit attesting that no discovery has been conducted and that discovery is needed into myriad issues, including, *inter alia*, the complete PREA investigation file of Plaintiff's reported assaults, past allegations of sexual abuse and harassment at JRDC and responses thereto, video footage monitoring practices and policies, employee training and files, and documents about Plaintiff and the reported sexual misconduct.   (ECF No. 33-1.)   Smith also declares that depositions are essential to test the veracity of Defendants' assertions—something particularly relevant here where Officer Defendants submit affidavits attesting to material facts Plaintiff disputes.

As to the County and County Defendants' Motions, as explained in detail below, the court finds 12(b)(6) dismissal of Plaintiffs' claims against them is appropriate; therefore, the court does not consider their alternative Rule 56 motions.   As to Officer Defendants' Motion, the above-

described discovery would tend to bear on material facts that may well, at a minimum, generate a triable issue hinging on witness credibility – the sole province of the factfinder.  Plaintiff has identified specific evidence she intends to seek that bears substantially on her opposition to summary judgment and, for the most part, "lies in the control of the moving party." *See Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (quoting *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014)).  The court therefore declines to convert the Officer Defendants' Motion and will resolve it per the standard applicable to a Rule 12(b)(6) challenge.

**B.  Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## C.  Consideration of Exhibits

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint.  A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."  *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "To be 'integral,' a document must be one 'that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 415 (D. Md. 2024) (emphasis in original) (quoting *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011).  The court may also take judicial notice of "'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Id.* (quoting *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).  Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment.  *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir.

2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Because the court declines to convert the pending motions, it will not consider the attached exhibits except where such exhibits are within the public record and thus subject to judicial notice.

## III.    ANALYSIS

Briefly, County Defendants argue that the claims against them in their official capacities fail as a matter of law; and Plaintiff fails to state claims against them as to § 1983 and Article 25 (Counts III and IV), and for negligent supervision and discipline (Count VI).  (ECF No. 23-1.)  For its part, the County seeks dismissal of all *Monell*/*Longtin* claims (Counts I, III, and IV) for failure to state a claim of an unconstitutional pattern or practice under § 1983.  (ECF No. 24-1.)  Finally, Officer Defendants move to dismiss Plaintiff's § 1983 claim in Count II because Plaintiff fails to allege they were acting under color of state law; as well as all § 1983, Article 25, and intentional tort claims (Counts I, II, IV, V, VII) because, they contend, their contacts with Plaintiff were consensual; and Plaintiff's IIED claim (Count VII) for failure to state a claim.  (ECF No. 25-1.)  The court addresses each count and Defendants' respective arguments below, turning first to Plaintiff's Eighth Amendment claims.

### A.  Eighth Amendment

Plaintiff's claims under § 1983 and Article 25 of the Maryland Declaration of Rights rest on allegations of violation of the Eighth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment.  "The Eighth Amendment guarantees inmates the right to be free from 'cruel and unusual punishments.'"  *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting U.S. CONST. AMEND. VIII).  This prohibition extends beyond simply a prisoner's sentence to "the treatment a prisoner receives in prison and the conditions

under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see Ford v. Hooks*, 108 F.4th 224, 229 (4th Cir. 2024) (same).    Article 25 of the Maryland Declaration of Rights similarly proscribes "cruel or unusual punishment inflicted[] by the Courts of Law."  MD. CONST. DECL. OF RTS. ART. 25.   Article 25 is "construed *in pari materia* with the Eighth Amendment." *Jordan v. Davis*, No. CV ELH-22-1541, 2023 WL 2478862, at *1 n.4 (D. Md. Mar. 13, 2023); *Harris v. State*, 479 Md. 84, 121 (2022) (describing the Supreme Court of Maryland's "longstanding precedent of interpreting Article 25 *in pari materia* with the Eighth Amendment").

"[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action'"; instead "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)).  Accordingly, a violation of the Eighth Amendment by a prison official occurs "only when two requirements are met."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   These two requirements include an "objective" element—that "the deprivation alleged [was], objectively, 'sufficiently serious,'" and a "subjective" element—"that prison officials acted with a 'sufficiently culpable state of mind.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834).

On the objective prong, for such a deprivation to be sufficiently serious, it must be "'extreme'—meaning that it poses 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'"  *Id.* (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)).  Further, "in determining whether a risk is 'substantial,' a court must 'assess whether society considers the risk that the prisoner complains of to be so grave that it violates

contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Jordan v. Maryland*, No. CV ELH-22-1541, 2024 WL 3597203, at *11 (D. Md. July 31, 2024) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

Relevant here, the Fourth Circuit recently explained:

> "Sexual abuse has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society. Nor does it comport with contemporary standards of decency." *Sconiers v. Lockhart*, 946 F.3d 1256, 1259 (11th Cir. 2020) (cleaned up). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." [*Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015); *see also Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). "And even if contact between an officer and an inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable." *Crawford*, 796 F.3d at 257.

*Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024). Indeed, "[t]here can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016); *see Woodford v. Ngo*, 548 U.S. 81, 118 (2006) (Stevens, J., dissenting) ("[T]hose inmates who are sexually assaulted by guards . . . have suffered grave deprivations of their Eighth Amendment rights."); *Makdessi v. Fields*, 716 F. App'x 148, 153 (4th Cir. 2017) (finding that "injuries from the assault and alleged rape satisfied the first prong by demonstrating "serious or significant physical . . . injur[ies] resulting from the challenged conditions' of confinement").

The subjective prong requires demonstration that "prison officials acted with a 'sufficiently culpable state of mind.'" *Scinto*, 841 F.3d at 225 (citing *Farmer*, 511 U.S. at 834). "'Deliberate

indifference is a very high standard,' and 'a showing of mere negligence will not meet it." *Ford*, 108 F.4th at 230 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)). "The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97–98 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834, 837–38). Ultimately, "[i]t is not enough that the prison official *should have* recognized the risk and the inadequacy of his response. Instead, the official 'actually must have perceived' both." *Ford*, 108 F.4th at 230 (quoting *Parrish*, 372 F.3d at 303). A plaintiff can prove "actual knowledge of a substantial risk 'in the usual ways, including inference from circumstantial evidence.' In other words, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor v. Pugh*, 817 F.3d 123, 127–28 (4th Cir. 2016) (quoting (quoting *Farmer*, 511 U.S. at 834, 837–38)).

## B.  42 U.S.C. § 1983

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" including, relevant here, the Eighth Amendment. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under section 1983, Plaintiffs "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

### 1. *Counts I, III, and IV as against the County*

The County seeks dismissal of Plaintiff's § 1983 Eighth Amendment and Article 25 claims (Counts I, III, IV) for failure to allege plausible pattern or practice claims; it specifically avers that Plaintiff's allegations fail to state a claim because they rely upon conclusory statements and do not include any other instances of alleged violations to demonstrate widespread practices required to show a municipal custom. (ECF No. 24-1 at p. 16.) Plaintiff counters that the County was obligated to protect her from sexual assault and that the County's policymakers (County Defendants) failed "to adopt the various standard national practices provided by PREA," letting Officer Defendants abuse Plaintiff. (ECF No. 33 at p. 14–15.) As to her Article 25 claim, Plaintiff also argues that the County is liable under a theory of respondeat superior. *Id.* at pp. 15–16.

In *Monell v. Department of Social Services*, the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). The Court further explained that "[l]ocal governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*

Similarly, "the Maryland Constitution recognizes a 'pattern or practice' claim as part of its protections of citizens against unconstitutional actions of local government and its employees."

*Prince George's Cnty. v. Longtin*, 419 Md. 450, 500 (2011).  Such a claim, referred to as a *Longtin*

claim, is "[t]he state analogue to a *Monell* claim."  *Palma v. Montgomery Cnty., Maryland*, 598 F.

Supp. 3d 288, 297 n.5 (D. Md. 2022); *see Devi v. Prince George's Cnty.*, No. CV DKC 16-3790,

2017 WL 3592452, at \*4 (D. Md. Aug. 21, 2017) ("Maryland, like the federal government,

imposes liability on municipalities for widespread patterns or practices that cause constitutional

injuries." (citations omitted)).  This court routinely analyzes *Monell* and *Longtin* claims together.[6]

*See, e.g.*, *Talley v. Anne Arundel Cnty., Maryland*, No. CV RDB-21-347, 2021 WL 4244759, at

\*13–14 (D. Md. Sept. 17, 2021); *Grim v. Balt. Police Dep't*, No. CV ELH-18-3864, 2019 WL

5865561, at \*26 (D. Md. Nov. 8, 2019); *Devi*, 2017 WL 3592452, at \*4.

In asserting a *Monell* claim, a plaintiff must "adequately plead . . . the existence of an

official policy or custom that is fairly attributable to the municipality and that proximately caused

the deprivation of their rights."  *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Such claims consist of two components: "(1) the municipality had an unconstitutional policy or

custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's

constitutional rights."  *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 554 (D. Md. 2021)

(citing *Bd. of Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 403 (1997)).  A policy or custom

that purports to give rise to liability will "not, however, 'be inferred merely from municipal

inaction in the face of isolated constitutional deprivations by municipal employees.'"  *Id.* (quoting

*Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)).  The municipality's conduct

must demonstrate "'deliberate indifference' to the rights of its inhabitants."  *Id.* (quoting *Jones v.*

*Wellham*, 104 F.3d 620, 626 (4th Cir. 1997)).  Municipal liability attaches only "when execution

---

[6] The claims are distinct, however – unlike federal law, "Maryland law imposes *respondeat superior* liability on municipalities for the State constitutional violations of its employees."  *Grim v. Balt. Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at \*26 (D. Md. Nov. 8, 2019).

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

A plaintiff may allege four types of policies, customs, or practices for which a municipality may be held liable:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.[7]

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217).

While it is true that often "a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery" and that "courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers," "boilerplate allegations will not suffice." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 556–57 (D. Md. 2021). "Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Balt. City State's Attys. Office,* 767 F.3d 379, 403 (4th Cir. 2014). *Monell* claims survive the motion to dismiss stage if the plaintiff alleges facts to support that the defendant "was aware of ongoing constitutional violations" and "did nothing to stop or correct those actions." *Smith v. Aita*, No. CV CCB-14-3487, 2016 WL 3693713, at *4 (D. Md. July 12, 2016), *aff'd,* 711 F. App'x 163 (4th Cir. 2018); *see Garcia v. Montgomery Cnty., Md.*, No. CIV. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013) (denying motion to dismiss where the plaintiff alleged that the defendant "was aware of the ongoing constitutional violations by [] officers and that the county's failure to

---

[7] As discussed in more detail below, the fourth type is commonly referred to as a "condonation theory" of liability.

supervise and discipline its officers allowed a pattern and/or practice of unconstitutional actions to develop").

The court construes Plaintiff's *Monell* and *Longtin* claims (Counts I, III, and IV) to assert theories of condonation, failure to supervise and discipline, failure to train, and respondeat superior (as to the *Longtin* claim only). The court addresses each theory in turn.

a. Condonation Theory

Under a theory of "custom by condonation," a municipality violates § 1983 if "municipal policy makers fail to put a stop to or correct a widespread pattern of unconstitutional conduct." *Owens v. Balt. City State's Attys. Office,* 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1389–90 (4th Cir. 1987)) (citations omitted); *see also Monell*, 436 U.S. at 690–91 (holding that "'[o]fficial policy' is not the only basis for imposing municipal liability. 'Custom, or usage,' in the exact language of § 1983, may also serve. And the existence of such a 'custom or usage' may be found in 'persistent and widespread . . . practices of [municipal] officials [which] although not authorized by written law, [are] so permanent and well-settled as to [have] the force of law'") (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167–68 (1970)). "Under the 'condonation' theory, unlike the 'express policy' theory, a plaintiff need not reference any specific written policy when making their claim—instead, it is sufficient to plead sufficient facts that demonstrate the existence of a widespread pattern or practice." *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2022 WL 846209, at *9 (D. Md. Mar. 22, 2022).

To state a *Monell* claim based on condonation, "[a] plaintiff must point to a persistent and widespread practice[] of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens*, 767 F.3d at 402 (citation omitted). "To survive a

18

motion to dismiss under Rule 12(b)(6), a plaintiff need only support his condonation claim with facts which, if true, 'state a claim to relief that is plausible on its face.'" *Jones v. Jordan*, No. CV GLR-16-2662, 2017 WL 4122795, at *9 (D. Md. Sept. 18, 2017) (quoting *Owens*, 767 F.3d at 403, that "simply alleging" a *Monell* claim is easier than prevailing on the merits). "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct." *Owens*, 767 F.3d at 402–403 (quoting *Spell*, 824 F.2d at 1391).

"Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 403 (quoting *Spell*, 824 F.2d at 1387). Further, a policy or custom that gives rise to § 1983 liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). "Only when a municipality's conduct demonstrates a 'deliberate indifference' to the rights of its inhabitants can the conduct be properly thought as a 'policy or custom' actionable under § 1983." *Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *8 (D. Md. Apr. 20, 2021) (quoting *Wellham*, 104 F.3d at 626). "To plead deliberate indifference, plaintiff need only allege that the municipality was aware of the alleged pattern or practice and 'that the municipality's failure to discipline its officers 'allowed' a custom, policy or practice 'of [constitutional] violations to develop.'" *Corbitt*, 2022 WL 846209, at *9 (quoting *Jordan*, 2017 WL 4122795, at *10).

By way of example, the Fourth Circuit in *Owens v. Baltimore City State's Attorney's Office* concluded that the plaintiff's "brief, but non-conclusory" allegations were sufficient to allege a plausible pervasive practice of misconduct:

> In support of his claim, Owens alleges that "[r]eported and unreported cases from the period of time before and during the events complained of" establish that the BCPD had a custom, policy, or practice of knowingly and repeatedly suppressing exculpatory

> evidence in criminal prosecutions. He further alleges that "a number
> of motions were filed and granted during this time period that
> demonstrate that [the BCPD] maintained a custom, policy, or
> practice to allow this type of behavior either directly or . . . by
> condoning it, and/or knowingly turning a blind eye to it."

767 F.3d 379, 403 (4th Cir. 2014). In contrast, however, this court has held "[i]t is not enough to

allege the instance at hand and infer that it is part of a broader practice." *Brent v. City of

Cumberland Police Dep't*, No. CV JKB-22-1349, 2023 WL 2457591, at *10 (D. Md. Mar. 10,

2023) (citing *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009)). An allegation

that a municipality's "constitutional violation is not a single isolated, accidental, or peculiar event

but, rather, a regular occurrence" that is unsupported by any other similar incidents is also

insufficient. *Krell v. Queen Anne's Cnty.*, No. CV JKB-18-637, 2018 WL 6523883, at *16 (D.

Md. Dec. 12, 2018).

The court turns to Plaintiff's allegations here. In support of Count I, Plaintiff alleges:

> 40. First, the County, through the actions of policymakers Defendant
> Klein and Defendant Tabor, only assigned one security officer – a
> male guard - to the mental health unit where Jane Doe was held.
>
> .        .        .
>
> 42. Second, the County, through the actions of policymakers
> Defendant Klein and Defendant Tabor, failed to ensure that
> surveillance cameras were properly monitored, as a result of
> deficient and tortious policies, procedures and customs. The County
> did so deliberately indifferent to the knowledge that lack of
> observance would allow unconstitutional actions, such as sexual
> abuse, to occur and even continue for months on end, unchecked.
>
> .        .        .
>
> 44. Finally, the County had a[n] open custom and practice of
> allowing sexual harassment and abuse. This culture of abuse was so
> notorious that other inmates were able to observe Jane Doe's
> harassment and send her written notes about it. Yet, no staff member
> or supervisor took any action or even commented on the open and
> notorious abuse.

(ECF No. 1 ¶¶ 40, 42, 44.)  Reading her Complaint broadly, Plaintiff also asserts that assigning a single officer, specifically a single male officer, to work on JRDC's mental health unit is "contrary to national correctional standards."  *Id.* ¶¶ 22–23.

The court is not persuaded that Plaintiff has alleged "a persistent and widespread practice[] of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference."  *See Owens*, 767 F.3d at 402, *supra*.  Plaintiff's allegations arise from alleged conduct that occurred over the course of about two months.  The alleged "open custom and practice of allowing sexual harassment and abuse" is supported solely by the allegations at issue in this action—actions directed solely to Plaintiff by two Officer Defendants.  Officer Defendants' actions toward Plaintiff may fairly be considered "persistent" as to Plaintiff, but the allegations are insufficient to support that the constitutional violation at issue—sexual assault at the JRDC mental health unit—was a persistent and widespread practice of significant duration such that policymakers had actual or constructive knowledge thereof.  Even broadly construed to permit all reasonable inferences, the nature of the allegations at issue here, which are cabined to Plaintiff's unique, individual experiences, set forth an insufficient basis on which to conclude that such conduct was part of a broader practice where Plaintiff does not allege other similar incidents.  *See Brent*, 2023 WL 2457591, at *10 and *Krell*, 2018 WL 6523883, at *16, *supra*.

The court therefore grants the County's Motion to dismiss Count I as to a condonation liability theory against the County.

      b.  <u>Failure to Supervise and Discipline Theory</u>

This court has previously recognized what it has referred to as "failure to supervise and discipline" theory of *Monell* liability.  *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520,

536 (D. Md. 2020). "Courts in this district have used the same standard—originally set forth by

the Fourth Circuit in *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)—to analyze both *Monell*

failure to supervise claims and personal capacity supervisory liability claims."[8] *Shipley v. Disney*,

No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022). "A failure to supervise

gives rise to municipal liability 'only in those situations in which there is a history of widespread

abuse.'" *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 536–37 (D. Md. 2020)

(quoting *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)).

> To state such a claim, a plaintiff must allege:

>> (1) that the supervisor had 'actual or constructive knowledge' that a
>> subordinate was engaged in conduct that 'posed a pervasive and
>> unreasonable risk of constitutional injury'; (2) that the supervisor's
>> response to that knowledge 'was so inadequate as to show deliberate
>> indifference to or tacit authorization of the alleged offensive
>> practices'; and (3) an 'affirmative causal link' between the
>> supervisor's inaction and the plaintiff's alleged constitutional injury.

*Cottman v. Baltimore Police Department, et al.*, No. 21-CV-00837-SAG, 2022 WL 137735, at *9–

10 (D. Md. Jan. 13, 2022) (quoting *Brown v. Bratton*, No. ELH-19-1450, 2020 WL 886142, at *34

(D. Md. Feb. 21, 2020)).

A plaintiff who fails "to allege widespread conduct by County employees that could

support the inference that County policymakers were aware of and tacitly condoned" the

unconstitutional violation by failing to supervise or discipline their employees is insufficient to

"nudge [a] *Monell* claim 'across the line from conceivable to plausible.'" *Brown v. Bratton*, No.

CV ELH-19-1450, 2020 WL 886142, at *35 (D. Md. Feb. 21, 2020) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). As explained *supra*, "a municipal policy or custom giving

rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated

---

[8] While there is significant overlap, for clarity, the court will separately analyze Plaintiff's supervisory liability claims
against County Defendants below.

constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d
227, 230 (4th Cir. 1984).

In support of Plaintiff's allegations as to this theory, she states:

> 43. Third, the County, through the actions of policymakers
> Defendant Klein and Defendant Tabor, failed to supervise its
> employees, Defendants Osiberu and Durodoye properly. Proper
> supervision would have included not only day-to-day supervision
> but also PREA audits and other accepted correctional standards for
> making sure that sexual abuse was not tolerated. The County did so
> with deliberate indifference to the harms that could result from
> improper staff supervision. Had these Defendants been properly
> supervised, they would not have had the opportunity, and continued
> opportunities, to sexually abuse Jane Doe.
>
> .        .        .
>
> 53. These Defendants failed to adequately train and supervise
> Defendants Officer Durodoye and Officer Osiberu and other staff at
> the Jennifer Road Detention Center.
>
> .        .        .
>
> 55. These Defendants' failures happened, despite their knowledge
> that adequate training and supervision was required, and that such
> lapses may lead to sexual assaults.

(ECF No. 1 ¶¶ 43, 53, 55.)

As discussed in the context of the condonation theory, Plaintiff's theory/ies of failure to
supervise and discipline similarly fail because she does not allege the widespread history of abuse
necessary to raise a plausible inference that supervisors had actual or constructive knowledge of
the allegedly unconstitutional conduct.  She has alleged neither a widespread practice, to support
an inference that the County (through County Defendants) were aware of and tacitly condoned the
conduct at issue here, nor similar incidents to those she experienced.  *See Brown*, 2020 WL 886142,
at *35, *supra*.  The court is not free to infer a municipal policy or custom subject to § 1983 liability
merely from alleged inaction in the face of such isolated alleged violations.  *See Milligan*, 743

F.2d at 230, *supra*.  Accordingly, the court will grant the County's Motion to the extent it seeks dismissal of Counts I, III, and IV on the basis of a failure to supervise and discipline theory.

        c.  <u>Failure to Train</u>

"A municipality can also be liable for an established policy through a failure to train, if it reflects a deliberate or conscious choice to not do so." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 309 (D. Md. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  "Training policy deficiencies can include (1) 'express authorizations of unconstitutional conduct,' (2) 'tacit authorizations' of such unconstitutional conduct, and (3) failures to adequately 'prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.'" *Id.* (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1390 (4th Cir. 1987)).  "A failure to train *Monell* theory requires a plausible demonstration that (1) the nature of the training was insufficient in some particularized manner; (2) the insufficiency of the training was a deliberate or conscious choice; and (3) a causal relationship existed between the failure-to-train and the injuries suffered." *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 298 (D. Md. 2022).

"As to the first element, 'the plaintiff must point out a specific deficiency in training, rather than general laxness or ineffectiveness in training.'" *Id.* (quoting *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 533 (D. Md. 2020)); *see Spell*, 824 F.2d at 1390 ("[A] sufficiently close causal link must be shown between potentially inculpating training deficiency or deficiencies and specific violation.  This requires first that a specific deficiency rather than general laxness or ineffectiveness in training be shown.").  Conclusory or broad-sweeping allegations of deficient officer training that was a deliberate or conscious choice by the municipality and which resulted in unconstitutional officer conduct are insufficient to state a claim. *See, e.g.*, *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2022 WL 846209, at *8 (D. Md. Mar. 22, 2022); *Devi*

*v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *3 (D. Md. Aug. 21, 2017); *Jones v. Chapman*, No. CIV.A. ELH-14-2627, 2015 WL 4509871, at *18–20 (D. Md. July 24, 2015); *Hall v. Fabrizio*, No. CIV. JKB-12-754, 2012 WL 2905293, at *2 (D. Md. July 13, 2012).

In *McDowell v. Grimes*, the court instructed:

> The nature of the training element requires more than bald assertions that police officers were not properly trained. It is not sufficient to state in broad, conclusory terms and in a variety of different ways that the police department failed to train and supervise its officers. Nor is alleging a general laxness or ineffectiveness sufficient to state a claim. Instead, a plaintiff must allege a specific deficiency with the training.

*McDowell v. Grimes*, No. CV GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018) (citations omitted); *see Johnson*, 452 F. Supp. 3d at 309 ("No matter which theory is alleged, the plaintiff must point out 'a specific deficiency' in training, 'rather than general laxness or ineffectiveness in training.'") (quoting *Spell*, 824 F.2d at 1390)). "[T]he municipality will only be liable if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Johnson*, 452 F. Supp. 3d at 309 (quoting *Harris*, 489 U.S. at 390).

Here, Plaintiff pleads the following allegations in support of her claims based on a failure to train theory:

> 53. Defendants failed to adequately train and supervise Defendants Officer Durodoye and Officer Osiberu and other staff at the Jennifer Road Detention Center.
>
> 54. These failures were a direct and proximate cause of the sexual abuse Jane Doe suffered.

> 55. These Defendants' failures happened, despite their knowledge
> that adequate training and supervision was required, and that such
> lapses may lead to sexual assaults.

(ECF No. 1 ¶¶ 53–55.)

Plaintiff's allegations offer no more than bald assertions that JRDC staff were not trained. *See McDowell*, *supra*. She does not identify what about their training was lacking, nor does she allege any factual details about a training program. *Id.* Indeed, "Plaintiff offers no additional allegations concerning the 'nature of training' or the manner in which '[] the officer's conduct resulted from said training.'" *Corbitt*, 2022 WL 846209, at *8 (quoting *Lewis v. Simms*, No. AW-11-CV-2172, 2012 WL 254024, at *1 (D. Md. Jan. 26, 2012), *aff'd*, 582 F. App'x 180 (4th Cir. 2014)); *see Hall v. Fabrizio*, JKB-12-754, 2012 WL 2905293, at *2 (D. Md. July 13, 2012) (dismissing plaintiff's failure to train claim where she did not allege "facts regarding the sort of training that [the] police officers actually receive").

In her opposition, Plaintiff contends the County's policymakers (County Defendants) failed to adopt various standard national practices provided by PREA and PREA requirements, resulting in harm to Plaintiff. (ECF No. 33 at p. 15.) The Complaint, however, does not assert specific deficiencies. Plaintiff notes that PREA requires employee training on prevention and detection of sexual abuse, but she does not allege any specific training deficiency at JRDC. (ECF No. 1 ¶ 17.) Instead, in conclusory fashion, she alleges that the County and County Defendants "have yet to fully implement [the PREA] standards at JRDC"; this allegation is vague and does not assert that the County failed to adopt such practices, whether specific trainings were not "fully implemented," or, most crucially, any specific training deficiency. *Id.* ¶ 18. Plaintiff's allegations on this theory are the type of non-descript, conclusory allegations that this court has repeatedly held are insufficient to state a claim. *See, e.g.*, *McDowell*, 2018 WL 3756727, at *4, *supra*.

Plaintiff contends that the Seventh Circuit's decision in *J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020), is "instructive" here. (ECF No. 33 at p. 14.) The court disagrees. In, *J.K.J.,* the Seventh Circuit addressed the reasonableness of the jury's verdict based on the evidence introduced at trial. *Id.* at 377–86. The issue here is not an evidentiary one, but a pleading one— Plaintiff does not allege sufficient facts to raise a plausible inference that the nature of Officer Defendants' training was "insufficient in some particularized manner" and that the insufficiency was a "deliberate or conscious choice." *See Palma*, 598 F. Supp. 3d at 298, *supra*.

The court will therefore grant the County's Motion to the extent it seeks dismissal of Counts I, III, and IV based on a failure to train theory.

d. <u>Respondeat Superior Liability</u>

Finally, the court considers whether Plaintiff states a claim against the County under a theory of respondeat superior as to Count IV, Plaintiff's *Longtin* claim. While "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), a *Longtin* claim is distinct in that "Maryland's constitution requires more of its municipalities, and accordingly [the Supreme Court of Maryland] has declined to shield municipalities from the unconstitutional acts of its officials." *Prince George's Cnty. v. Longtin*, 419 Md. 450, 493 (2011). Accordingly, a municipality is liable under a theory of respondeat superior for constitutional violations committed by its officials. *Id.* at 493–94 (quoting *DiPino v. Davis*, 354 Md. 18, 51–52 (1999)).

"Under the doctrine of respondeat superior, an employer is jointly and severally liable for the torts committed by an employee acting within the scope of his employment."[9] *Willey v. Bd. of*

---

[9] "[W]here government employees' actions have been at issue, [Maryland courts] have treated as synonymous the term 'scope of employment' within the [Local Government Tort Claims Act], the term 'scope of the public duties' within the [Maryland Tort Claims Act], and the term 'scope of employment' for purposes of the doctrine of *respondeat superior*." *Baltimore City Police Dep't v. Potts*, 468 Md. 265, 284–85 (2020).

*Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 671 (D. Md. 2021) (quoting *Jordan v. Western Distributing Co.*, 286 F. Supp. 2d 545, 548 (D. Md. 2003)).  Maryland caselaw provides guidance on what constitutes conduct within the scope of employment.[10]  *Baltimore City Police Dep't v. Potts*, 468 Md. 265, 271 (2020).  "[T]he test for determining whether acts were within the scope of employment is whether the challenged acts were in furtherance of the employer's business and could be fairly termed 'incident to the performance of duties entrusted to' the employee." *Houghton v. Forrest*, 412 Md. 578, 592 (2010).

An employer "may be held liable for the intentional torts of [an employee] where the [employee]'s actions are within the scope and in furtherance of the [employer]'s business and the harm complained of was foreseeable." *Potts*, 468 Md. at 286 (quoting *Cox v. Prince George's Cnty.*, 296 Md. 162, 171 (1983)).  An employee's actions are outside the scope of employment where they are "personal, [ ] where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his [or her] own interests, even if during normal duty hours and at an authorized locality[.]"  *Id.* at 290 (quoting *Sawyer v. Humphries*, 322 Md. 247, 256–57 (1991)).  Where an employee's conduct "'is unprovoked, highly unusual, and quite outrageous,' courts tend to hold 'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Sawyer*, 322 Md. at 257.

Particularly relevant here is the Supreme Court of Maryland's discussion in *Potts, supra*:

> In determining whether an employee acted within the scope of employment, a court must engage in a case-specific analysis—*i.e.*, resolve the issue on a fact-intensive, case-by-case basis. Indeed, within Maryland case law regarding scope of employment, "there

---

[10] The court acknowledges that Plaintiff alleges that Officer Defendants were acting "within the scope of their employment" at the time of the sexual assaults.  (ECF No. 1 ¶ 62.)  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, the court is not obligated to accept Plaintiff's legal conclusion as true.

> are few, if any, absolutes." *Sawyer*, 322 Md. at 255, 587 A.2d at 471.
> Like the United States District Court for the Northern District of
> Alabama, though, we agree that it is evident that where an officer
> sexually assaults a suspect in custody, the officer does not act within
> the scope of employment, and where an officer uses excessive force,
> the officer may be acting within the scope of employment. *See Titan
> Indem.*, 39 F. Supp. 2d at 1342-43. Between these opposite ends of
> the spectrum, in Maryland, the constant is that the test enunciated
> by this Court in *Sawyer* is accepted as the framework for analyzing
> whether an officer acted within the scope of employment.

468 Md. at 306; *cf. Doe v. Uber Techs., Inc.*, No. CV JKB-20-0370, 2021 WL 2382837, at *4 (D.

Md. June 9, 2021) ("Courts applying Maryland law have consistently found that 'an employer is

not vicariously liable for the torts of assault and battery based on sexual assaults by [an] employee

as they are outside the scope of employment.'" (citing cases)).  This holding is consistent with the

court's holding in *Wolfe v. Anne Arundel Cnty.*, 374 Md. 20 (2003), that "in raping the plaintiff, a

county law enforcement officer acted outside the scope of employment."  *Potts*, 468 Md. at 293

(describing its holding in *Wolfe*).

Thus, where Plaintiff's theory of respondeat superior liability is based upon two

employees' sexual assault conduct, such conduct is outside the scope of their employment based

upon Maryland law.[11]  The court will therefore grant the County's Motion and dismiss Count IV

to the extent it is based upon a theory of respondeat superior liability.

### 2. *Official Capacity Claims against County Defendants*

County Defendants first argue that the claims asserted against them in their official

capacities should be dismissed because such claims are effectively claims against the County.

(ECF No. 23-1 at p. 14.)  Plaintiff does not appear to respond to this argument.[12]  As the distinction

---

[11] Because the court grants County Defendants' Motion, there is no basis for respondeat superior liability based upon their alleged actions.  (ECF No. 33 at p. 16.)

[12] To the extent Plaintiff intended to respond to this argument by asserting a theory of supervisory liability, that does not pass muster.  "[S]upervisory liability has no bearing on whether an individual can be sued for damages in their official capacity under § 1983."  *Est. of Valentine by & through Grate v. South Carolina*, 611 F. Supp. 3d 99, 132

between individual and official capacities is not material to Plaintiff's state law claims,[13] the court considers County Defendants' arguments as to Plaintiff's § 1983 claims.

As the Supreme Court has held, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978)). "For purposes of Section 1983, these official-capacity suits are 'treated as suits against the [municipality].'" *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). A district court therefore "correctly dismisse[s] as duplicative [a § 1983 claim] against the individual defendants in their official capacities." *Z.G. by & through C.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 780 (4th Cir. 2018), *abrogated in part on other grounds, Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023).

Indeed, this court has repeatedly dismissed claims against public officials in their official capacities where such claims are duplicative of a *Monell* claim against the municipality. *See, e.g.*, *Neal-Williams v. Addison*, No. CV 21-3280 PJM, 2024 WL 1995034, at *4 (D. Md. May 6, 2024); *Mealey v. Baltimore City Police Dep't*, No. 1:21-CV-02332-JRR, 2023 WL 2023262, at *9 (D.

---

(D.S.C. 2019). Indeed, "when supervisory liability is imposed, it is imposed against the supervisory official *in his individual capacity* for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 267 (M.D.N.C.), *on reconsideration in part,* 136 F. Supp. 3d 719 (M.D.N.C. 2015) (quoting *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987)). Such a theory is thus not competent to support Plaintiff's § 1983 claim against County Defendants in their official capacities.

[13] "State law does not allow . . . bifurcation" of state constitutional and intentional tort claims as to official and individual capacities. *Ritchie v. Donnelly*, 324 Md. 344, 375 (1991); *see Graham v. Maryland*, 738 F. Supp. 3d 644, 657 (D. Md. 2024) (same). *See also Higginbotham v. Pub. Serv. Comm'n of Md.*, 412 Md. 112, 130 (2009) (noting that in the context of "intentional tort actions asserted against Maryland public officials . . . it is of no consequence whether the Maryland public official is sued in his or her 'official' capacity or 'individual' capacity"); *Shriner v. City of Annapolis*, No. CIV.A. ELH-11-2633, 2012 WL 2317415, at *3 (D. Md. June 15, 2012) ("[T]he Maryland Court of Appeals has made clear that the individual/official capacity dichotomy is not relevant to claims under Maryland state law" and therefore, "[i]t is not meaningful under Maryland law to divide claims according to individual capacity and official capacity").

Md. Feb. 15, 2023); *Cottman v. Baltimore Police Department*, No. 21-CV-00837-SAG, 2022 WL

137735, at *5 (D. Md. Jan. 13, 2022); *Grim v. Baltimore Police Dep't*, No. CV ELH-18-3864,

2019 WL 5865561, at *16 (D. Md. Nov. 8, 2019). *See also Lilly v. Baltimore Police Dep't*, 694

F. Supp. 3d 569, 591 (D. Md. 2023) (noting that '[t]o the extent that Plaintiffs assert either of their

§ 1983 claims (Counts 1 and 2) against either Nadeau and/or Lekeshia Blue in their official

capacities, those claims are duplicative of the *Monell* claim against BPD because 'an official

capacity claim . . . is a claim against a government entity of which an agent is an officer'" (quoting

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985))).

Accordingly, here, where Plaintiff's § 1983 claims against County Defendants in their

official capacities and against the County are based on the same conduct, they are duplicative. *See*

*Cottman v. Baltimore Police Department, et al.*, No. 21-CV-00837-SAG, 2022 WL 137735, at *5–

6 (D. Md. Jan. 13, 2022) (dismissing claims against individual defendants in their official

capacities).

### 3. *Counts III and IV as against County Defendants*

County Defendants also seek dismissal of Counts III and IV on the basis that Plaintiff fails

to allege a plausible claim of supervisory liability under § 1983 and Article 25.[14] (ECF No. 23-1

at p. 15–18.) They also contend that they are protected by qualified immunity. *Id.* at p. 18–19.[15]

"At times, 'supervisory officials may be held liable . . . for the constitutional injuries

inflicted by their subordinates.'" *Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020), *as*

---

[14] County Defendants contend the Complaint sets forth no allegations that County Defendants acted personally to violate Plaintiff's Eighth Amendment and Maryland constitutional rights; Plaintiff's response clarifies that the claim against them is premised on a theory of supervisory liability (as to both counts) and respondeat superior liability (as to Count IV). (ECF No. 33 at pp. 16–19.)

[15] To the extent Plaintiff asserts Count IV as against County Defendants based upon a theory of respondeat superior, that claim would fail for the same reasons discussed *supra*; Maryland law confirms that "where an officer sexually assaults a suspect in custody, the officer does not act within the scope of employment." *Baltimore City Police Dep't v. Potts*, 468 Md. 265, 306 (2020).

*amended* (Aug. 28, 2020) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Supervisory liability under § 1983 "arises from the obligation of a supervisory law officer to insure that his subordinates act within the law." *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1031 (D. Md. 2019) (quoting *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 203 (4th Cir. 2002)). "'If a supervisory law officer is deliberately indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates,' and he may be held liable." *Campbell*, 972 F.3d at 398 (quoting *Randall*, 302 F.3d at 203). Such liability "is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict." *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). As explained *supra*, the court applies the same standard in analyzing *Monell* failure to supervise claims and personal capacity supervisory liability claims. *Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022).

Akin to the court's discussion *supra*, to state a § 1983 claim of supervisory deliberate indifference, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 552 (D. Md. 2021) (quoting *Shaw*, 13 F.3d at 799); *see Wilkins v. Upton*, 639 F. App'x 941, 945 (4th Cir. 2016) (same); *Randall*, 302 F.3d at 206 (4th Cir. 2002) (same); *Canter v. Schoppert*, No. GJH-16-2545, 2020 WL 1150774, at *7 (D. Md. Mar. 6, 2020) (same). While a *Monell* failure to supervise claim turns on "whether the

municipal defendant has adopted a widespread practice or custom of failing to supervise its officers," personal capacity supervisory liability claims turn on "whether an individual supervising defendant knew about, was deliberately indifferent to, and—through his or her inaction—caused the constitutional injury alleged." *Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022). In such personal capacity claims, "a complaint must contain specific allegations of each individual's conduct and state of mind." *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). Ordinarily, "a single act or isolated incidents" are "insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *see Campbell*, 972 F.3d at 398 (explaining that "ordinarily, the plaintiff cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." (citations omitted)). Therefore, a failure to supervise generally gives rise to a § 1983 violation only "in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel." *Wellington*, 717 F.2d at 936.

By way of example, in *Kline v. Maryland*, this court held that the plaintiff could not proceed on a theory of supervisory deliberate indifference where the plaintiff alleged that the defendant "acquiesced in, tolerated and permitted a pattern of unlawful, improper and unconstitutional conduct," but the broad-sweeping allegation was "not supported by any concrete factual

allegations." No. CV JKB-20-0722, 2020 WL 7489473, at *5 (D. Md. Dec. 18, 2020). Absent such allegations, the court explained, there was no reasonable basis on which to conclude the defendant had actual or constructive knowledge of the pervasive and unreasonable risk of constitutional injury. *Id.*

As with the *Monell* claim based upon theories of condonation and failure to supervise and discipline, Plaintiff's § 1983 and Article 25 supervisory liability claims fail. Plaintiff does not allege sufficient facts to raise a plausible inference that County Defendants had actual or constructive knowledge of the unconstitutional conduct at issue. Again, Plaintiff does not allege "a history of widespread abuse," but rather relies on allegations of isolated (albeit, egregious) incidents of abuse by two correctional officers against one specific person. To be sure, these allegations are "repugnant to contemporary standards of decency," *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016); yet they do not assert the history of widespread abuse necessary to raise a plausible inference of Country Defendants' actual or constructive knowledge.

Plaintiff's reliance on *Makdessi v. Fields*, 789 F.3d 126 (4th Cir. 2015), does not compel a different outcome. There, the Fourth Circuit recognizes, as this court discussed *supra*, "that actual knowledge can be shown by circumstantial evidence that the risk was so obvious that the Defendants had to know it." *Id.* at 135. In *Makdessi*, however, the "obvious" risk was present where the plaintiff had complained to prison officials "for years about the abuse he suffered" to no avail and was subjected to threats of violence when he did complaint; thereafter, he was "placed in a cell with a violent gang member, who beat and raped him" on two occasions—one of which occurred after the plaintiff had reported the initial assault. *King v. Riley*, 76 F.4th 259, 267 n.9 (4th Cir. 2023) (discussing *Makdessi*). As the Fourth Circuit subsequently reflected in *King*: "it's

no wonder we held that the officials were deliberately indifferent to an obvious risk," and "that the risk was obvious in *Makdessi* says little about whether it was obvious" in the case at bar.  *Id.*

Unlike *Makdessi*, where the circumstantial evidence supported a finding that the risk was "so obvious" that Defendants had to know it, Plaintiff does not allege similar circumstances here. Indeed, Plaintiff's theory that the risk was obvious is based on the existence of PREA—meaning that, according to Plaintiff, all municipality supervisors are deemed to have constructive notice that their subordinates are engaging in unconstitutional conduct, specifically sexual abusing people who are incarcerated, whether that is true or not.  As explained earlier, the court is not persuaded that the mere existence of PREA can support a conclusion of constructive notice; and the authorities on which Plaintiff relies do not support such a conclusion because they are materially distinguishable.  The court will therefore grant County Defendants' Motion to the extent it seeks dismissal of Counts III and IV against County Defendants.[16]

### 4.  *Counts I, II, and IV as against Officer Defendants*

Officer Defendants argue that Plaintiff is unable to state a claim of cruel and unusual punishment in violation of the Eighth Amendment because their "sexual contacts" with Plaintiff were consensual.  (ECF No. 25-1 at pp. 6–7.)  The entirety of Officer Defendants' argument stems from their assertion that the sexual contacts with Plaintiff were consensual and not done for the purpose of sexual gratification or humiliating, degrading, or demeaning Plaintiff.  *Id.* at p. 7. Because the court does not consider Officer Defendants' affidavits wherein they assert the sexual contact at issue was consensual, their Motion fails on that basis alone.[17]

---

[16] Because the court finds that Plaintiff fails to allege a plausible claim of supervisory liability under § 1983 as to County Defendants, the court will not reach their qualified immunity argument.

[17] In support of their arguments as to the § 1983 claims, Officer Defendants do not argue that Plaintiff's pleadings are deficient as to consent as they do with respect to Plaintiff's intentional tort claims.  (ECF No. 25-1 at p. 6–9.)  The court therefore does not consider same in addressing Officer Defendants' present arguments.  In any event, such argument would be unavailing in view of the definitions of sexual abuse and sexual harassment under PREA and the court's discussion *infra*.

Officer Defendants' argument rests on a standard described by the Ninth Circuit in *Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020), where it held that "a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Id.* at 1144. This sentiment was recently echoed by the Fourth Circuit. *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) ("A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." (citation omitted)).

The court is unpersuaded by Officer Defendants' argument. *Bearchild* involved an allegation of sexual assault that arose from a prison guard's pat-search of the plaintiff. 947 F.3d at 1135. *Johnson* involved strip searches for contraband. 105 F.4th at 106. The analyses in those cases turned on defenses of legitimate penological justifications for the challenged conduct. The allegations here allow for no such legitimate purpose; regardless, neither Officer Defendant raises an argument of legitimate penological purpose.

Even were the court to accept as true Officer Defendants' contention that their sexual contacts with Plaintiff were consensual (which the court does not do on a 12(b)(6) analysis), their argument is nonsensical. Consensual sexual contact is engaged in for one's own desire or gratification. And Officer Defendants' ignore Plaintiff's express allegations that they sexually assaulted her "for the purpose of humiliating, degrading, or demeaning" her. *See Bearchild*, 947 F.3d at 144; ECF No. 25-1 at p. 7 (alleging that Officer Defendants' conduct was "malicious, lascivious[,] and sadistic").

The court will deny their Motion as to Counts I, II, and IV on the basis of consent.[18]

### 5. *Count II as against Officer Defendants*

As to Count II in particular, Officer Defendants argue that Plaintiff's § 1983 claim fails because her allegations are insufficient to establish that the sexual contacts occurred under color of state law. (ECF No. 25-1 at p. 6.) The assert that because the sexual contacts at issue "were not furthered by any actual or purported state authority or within the ambits of [Officer Defendants'] official duties," their conduct was not performed under color of law. *Id.* Plaintiff disagrees. (ECF No. 33 at pp. 23–25.)

"The phrase 'under color of state law' is an element that 'is synonymous with the more familiar state-action requirement—and the analysis for each is identical.'" *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). It excludes "merely private conduct, no matter how discriminatory or wrongful." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). Assessment of whether someone acted under color of state law "demand[s] that 'the conduct allegedly causing the deprivation of a

---

[18] Officer Defendants also argue that Count IV should be dismissed against them because Article 25 does not apply to individuals such as Officer Defendants here. (ECF No. 25-1 at p. 9.) This argument is unavailing in view of the long history of reading Article 25 *in pari materia* with the Eighth Amendment. *See Harris, supra*, and Maryland precedent identifying Article 25 claims brought against individuals. *See, e.g.*, *Torbit v. Baltimore City Police Dep't*, 231 Md. App. 573, 590 (2017).

federal right be fairly attributable to the State.'" *Davison*, 912 F.3d at 679, *as amended* (Jan. 9, 2019) (quoting *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006)).

Whether conduct constitutes action under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity." *Id.* at 679–80 (quoting *Holly*, 434 F.3d at 292). No one factor is "individually dispositive." *Holly*, 434 F.3d at 292 (quoting *Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 343 (4th Cir. 2000)). "Courts must examine the 'totality of the circumstances,' to determine if the action at issue 'bore a sufficiently close nexus with the State to be fairly treated as that of the State itself.'" *Davison*, 912 F.3d at 680 (quoting *Holly*, 434 F.3d at 292; *Rossignol*, 316 F.3d at 525).

The Fourth Circuit's opinion in *Davison* is instructive here:

> [T]his Court has held that a defendant's purportedly private actions bear a "sufficiently close nexus" with the State to satisfy Section 1983's color-of-law requirement when the defendant's challenged "actions are linked to events which arose out of his official status." *Id.* at 524. When a defendant's "status" as a public official "enabled [her] to execute [a challenged action] in a manner that private citizens never could have," then the action also is more likely to be treated as attributable to the state. *Id.* at 526; *see also Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("[S]ection 1983 is . . . implicated . . . [when] the conduct is such that the actor could not have behaved in that way but for the authority of his office."); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000) (holding that challenged conduct is more likely to amount to state action when "the injury caused is aggravated in a unique way by the incidents of governmental authority" (internal quotation marks omitted)). Likewise, an official's conduct is more likely to amount to state action when it "occurs in the course of performing an actual or apparent duty of his office." *Martinez*, 54 F.3d at 986. And the challenged action of a defendant governmental official is likely to be treated as taken under color of law when the official "use[d] the power and prestige of his state office to damage the plaintiff." *Harris v. Harvey*, 605 F.2d 330, 337 (7th Cir. 1979).

912 F.3d at 680.

Plaintiff here alleges that Officer Defendants sexually harassed, abused, and assaulted her while they acted as correctional officers assigned to JRDC's mental health unit where she was detained.  (ECF No. 1 ¶¶ 23–25.)  Much of the abuse is alleged to have occurred while Officer Defendants approached Plaintiff in her cell, in the course of performing their duties on the mental health unit, or by watching her on the in-cell cameras while at the officer station.  Their alleged abuse also included threats to place her in solitary confinement if she refused to comply with their demands.  These allegations are more than sufficient to allege that Officer Defendants' conduct occurred during the course of performing their duties, resulted from their respective status—enabling them to execute the sexual abuse in a manner that a private citizen could not have, and relied upon the use of the power of their positions to harm Plaintiff.  *See Davison*, 912 F.3d at 680, *supra*.  Officer Defendants' contention that their "sexual contacts" with Plaintiff were not furthered by any actual or purported state authority is resoundingly contradicted by the allegations on their face.

The court will deny Officer Defendants' Motion as to Count II on this basis.

### 6.  Count V: Assault and Battery Claim against Officer Defendants[19]

Officer Defendants seek dismissal of Count V and VII against them based upon their contention that Plaintiff consented to the sexual contact.  (ECF No. 25-1 at p. 10.)  Plaintiff counters that she was unable to consent to the sexual contacts while she was incarcerated.  (ECF No. 33 at p. 26.)

In Maryland, assault is defined as an "attempt to cause a harmful or offensive contact with

---

[19] "When considering a State law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction."  *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 418 n.17 (D. Md. 2022) (citing cases).  Maryland adheres to the rule of *lex loci delicti* in analyzing the choice of law applicable to tort actions; the court therefore applies Maryland substantive law as the law of the state where the wrong is alleged to have occurred.  *Id.* (quoting *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008)).

another or to cause an apprehension of such contact." *Miles v. DaVita Rx, LLC*, 962 F. Supp. 2d 825, 834 (D. Md. 2013) (quoting *Wallace v. Poulos,* 861 F. Supp. 2d 587, 596 n. 9 (D. Md. 2012)). It "consists of a threat from a defendant with the 'apparent ability to carry out that threat' which raises in the mind of the plaintiff an apprehension of imminent bodily harm." *Braun v. Maynard*, No. 1:09-CV-1897, 2010 WL 1375172, at *6 (D. Md. Mar. 31, 2010), *aff'd,* 652 F.3d 557 (4th Cir. 2011) (quoting *Lee v. Pfeifer,* 916 F. Supp. 501, 505 (D. Md. 1996)).  Accordingly, assault bears "two basic elements"—"(1) the plaintiff must allege that [she] was threatened by the defendant, who possessed the apparent present ability to carry out that threat, which element is measured by a standard of reasonableness," and "(2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm, which element is measured by a subjective standard apprehension of such a contact.*" Griffin v. Clark*, No. RWT 11-2461, 2012 WL 4341677, at *4 (D. Md. Sept. 20, 2012).

Relatedly, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 355 Md. 593, 600 (1999) ("A battery occurs when one intends a harmful or offensive contact with another without that person's consent."); *see White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 504 (2017) (citation omitted) (defining battery as "the intentional touching of a person without that person's consent").

Officer Defendants' sole challenge to Plaintiff's pleading of these claims is that the "sexual contacts" at issue between Plaintiff and Officer Defendants were consensual.  (ECF No. 25-1 at p. 10.)  Plaintiff avers in response that "consent is legally not even possible in the inherently coercive environment of a custodial setting."  (ECF No. 33 at p. 26.)  As the court explained *supra*, it does not consider the merit or weight of Officer Defendants' assertions of consent in ruling on their motion; but the court does consider their argument to the extent it concerns whether Plaintiff has

plausibly alleged such claims.

Helpful here, the Appellate Court of Maryland provides the following guidance on "consent" in the context of battery:

> Consent occurs when a plaintiff "manifests a willingness that the defendant engage in conduct and the defendant acts in response to such a manifestation." *W. Page Keeton, et al., Prosser & Keeton on the Law of Torts,* § 18, at 113 (5th ed., 1984) (hereinafter, "*Prosser & Keeton* "). *Accord, Restatement (2d) Torts,* § 892(1), at 362 (consent is "willingness in fact for conduct to occur"). Consent may be inferred from words, actions, or inactions if reasonably understood by another to indicate consent, even if not expressly communicated to the actor. *Id.,* § 892. But consent "must be knowingly and intelligently given, and not the result of fraud or incompetency . . . " 6A *C.J.S., Assault & Battery,* § 16.

*Janelsins v. Button*, 102 Md. App. 30, 37–38 (1994).

While the Complaint does not expressly allege Plaintiff did not consent (or that she was unable to consent either by virtue of her incarcerated status or her mental health disability), her allegations survive Officer Defendants' argument.  The Complaint, factually and as compared and contrasted to the above-cited authorities, contains sufficient allegations to support an inference that she did not consent to the alleged conduct (the alleged assaults and batteries).

First, Plaintiff accuses Officer Defendants of "sexual harassment, sexual abuse, and ultimately sexual assaults."  By their common meaning, these phrases encompass and connote non-consent.[20]  (ECF No. 1 ¶ 26.)  Further, Plaintiff alleges facts that raise a question of whether Plaintiff "manifest[ed] a willingness" to Officer Defendants' sexual advances and whether any purported consent (which, again, is based upon evidence not currently before the court) was "knowingly and intelligently given." *See Janelsins*, 102 Md. App. at 37–38.  Specifically, Plaintiff

---

[20] For example, "[t]he term 'sexual assault' means any nonconsensual sexual act proscribed by federal, tribal, or state law, including when the victim lacks capacity to consent."  OFF. OF VIOLENCE AGAINST WOMEN, *Sexual Assault*, U.S. DEP'T OF JUST., available at https://www.justice.gov/ovw/sexual-assault (last visited March 3, 2025).

alleges that Officer Defendants threatened her with solitary confinement if she resisted or refused their commands. (ECF No. 1 ¶ 26.)

The court is persuaded at this stage that Plaintiff adequately pleads non-consent. Officer Defendants' Motion is therefore denied on that basis.[21]

### 7.  Count VI: Negligent Supervision and Discipline Claim against County Defendants

County Defendants move to dismiss Count VI against them on the basis that Plaintiff fails to state a claim for failure to train because (i) she does not "identify any particular training practices" or specific deficits or omissions in their training; and (ii) she does not allege that they had "actual or constructive notice" of Officer Defendants' conduct. (ECF No. 23-1 at pp. 20–21.) They also argue they are protected by public official immunity. *Id.* at 21. Plaintiff argues that "there is no requirement that [County Defendants] had to receive notice that [Officer Defendants] would have committed sexual assault." (ECF No. 33 at 20.)

As an initial matter, the court is unaware of a claim for "negligent discipline" under Maryland law and thus construes Plaintiff's claim as a claim of negligent training or supervision. "An employer is obligated 'to the public to use due care in selecting and retaining only competent and careful employees.'" *State v. Jones*, 197 Md. App. 638, 669–70 (2011), *rev'd on other grounds,* 425 Md. 1 (2012) (citing *Henley v. Prince George's Cnty.,* 60 Md. App. 24, 36 (1984)); *see Mitchell v. Rite Aid of Maryland, Inc.*, 257 Md. App. 273, 333, *cert. denied,* 483 Md. 579 (2023) (explaining that "employers are required to 'make some reasonable inquiry before hiring or retaining the employee to ascertain his fitness, or the employer must otherwise have some basis for believing that he can rely on the employee'") (quoting *Evans v. Morsell*, 284 Md. 160, 167 (1978)).

---

[21] Officer Defendants' argument that Plaintiff's consent also bars her IIED claim is not persuasive for these same reasons.

In order to state a claim for negligent hiring, training, or supervision:

> Plaintiff must show: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries."

*Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022). These same elements were also identified in the Appellate Court of Maryland's decision in *Mitchell v. Rite Aid of Maryland, Inc.* 257 Md. App. 273, 333, *cert. denied,* 483 Md. 579 (2023). *See also Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 272–73 (2011), *abrogated on other grounds by Plank v. Cherneski*, 469 Md. 548 (2020) (identifying the above elements that must be alleged "[t]o survive a motion to dismiss"); *Francis v. Maryland*, No. CV ELH-21-1365, 2023 WL 2456553, at *35 (D. Md. Mar. 10, 2023) (stating the same elements).

"There is a rebuttable presumption that an employer uses due care in hiring an employee." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 419 (D. Md. 2022) (citations omitted); *see Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004) (same). "[W]ith respect to an employee's intentional torts, 'the critical standard is whether the employer knew or should have known that the individual was potentially dangerous.'" *Doe*, 595 F. Supp. 3d at 419 (quoting *Jordan v. Western Distributing Co.*, 135 F. App'x 582, 589 (4th Cir. 2005)).

County Defendants' arguments seem to focus on the third and fifth elements—that Plaintiff fails to allege they had actual or constructive knowledge of the incompetence, and that their negligence in training related to PREA was the proximate cause of her injuries. (ECF No. 23-1 at p. 20–21.) As explained *supra*, Plaintiff does not allege facts in support of her claim of training deficiencies that resulted in Officer Defendants' alleged sexual abuse. That said, even assuming Plaintiff's allegations are sufficient as to training, she fails to allege facts that County Defendants

had actual or constructive knowledge of Officer Defendants' incompetence.  *See, e.g.*, *Simon v. Dick's Sporting Goods, Inc.*, No. CV JKB-22-1238, 2022 WL 16722400, at *5 (D. Md. Nov. 4, 2022) (explaining that the plaintiff had not adequately alleged that the defendant knew or should have known that its employees "were capable of inflicting the alleged harm"); *Taylor v. MGM Resorts Int'l, LLC*, No. CV DKC 21-3192, 2022 WL 2971955, at *5 (D. Md. July 27, 2022) (explaining that the plaintiff had not adequately alleged that the defendants knew or should have known that the defendant was capable of the conduct at issue where nothing in the complaint suggested that another defendant had done so before or had "otherwise conducted himself in a manner suggesting he was likely to" do so).  Indeed, Plaintiff's opposition implicitly confirms as much by urging that their constructive knowledge is based on PREA.  (ECF No. 33 at p. 20.)  For the reasons previously discussed, the court is not persuaded that County Defendants' knowledge of PREA constitutes "actual or constructive knowledge" of Officer Defendants' incompetence.

The court will therefore grant County Defendants' Motion to the extent it seeks dismissal of Count VI against them.[22]

### 8.  Count VII: IIED Claim against Officer Defendants

Finally, Officer Defendants assert that Plaintiff fails to state a claim for IIED, arguing that she fails to allege facts sufficient to show that their conduct was intentional or reckless, extreme and outrageous, and that she suffered severe emotional distress.  (ECF No. 25-1 at p. 11–12.)  In response, Plaintiff argues that her pleadings are sufficient and states that "[n]o more specific allegation was required" as to her emotional distress.  (ECF No. 33 at p. 30.)

"To state a prima facie case of intentional infliction of emotional distress, a plaintiff must allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct

---

[22] Because the court concludes that Plaintiff fails to state a claim against County Defendants based upon negligent training and supervision, the court does not reach their public official immunity argument.

was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). "When attempting to make such a showing, plaintiffs need to plead with specificity, as reciting 'in conclusory form the bare elements of an intentional infliction of emotional distress claim' will not do." *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023) (quoting *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 683 (D. Md. 2012)); *see Mulamba v. Bd. of Educ. of Baltimore Cnty.*, No. 1656, Sept. term, 2023, 2024 WL 5103270, at *11 (Md. Ct. Spec. App. Dec. 13, 2024) ("Each element of an IIED claim must be 'pled and proved with specificity.'") (quoting *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000)).   "To be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59–60, *cert. denied*, 306 Md. 118 (1986)). "Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, 'rarely viable.'" *Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*, No. CV ELH-20-0423, 2021 WL 1720235, at *14 (D. Md. Apr. 30, 2021) (citing cases).

Even assuming the first three elements of an IIED claim were plausibly alleged,[23] Plaintiff's pleading as to the resulting emotional distress is deficient. "In the context of an IIED claim, 'mere allegations of emotional trauma or humiliation are insufficient.'" *Grant v. Atlas Rest. Grp., LLC*, No. CV GLR-20-2226, 2021 WL 2826771, at *5 (D. Md. July 7, 2021) (quoting *Solis v. Prince George's Cnty.*, 153 F.Supp.2d 793, 804 (D. Md. 2001)).   "To survive a motion to

---

[23] Because the court concludes Plaintiff fails to plead sufficient facts in support of her claim of severe emotional distress, it does not address Officer Defendants' challenges to the first two elements; however, it notes without deciding that its earlier discussion of Plaintiff's claims of sexual assault suggests that their challenges that sexual assault is not intentional, or sufficiently extreme or outrageous, are not on strong footing.

dismiss, the facts alleged must give rise to the inference that, because of the defendant's egregious conduct, the plaintiff experienced 'severely disabling emotional trauma,' . . . , *i.e.*, that she was rendered 'unable to function' or 'unable to attend to necessary matters.'" *Lewis-Davis,* 2021 WL 1720235, at *14 (quoting *Chin v. Wilhelm*, CCB-02-01551, 2006 WL 827343, at *9 (D. Md. Mar. 24, 2006)); *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161 (1986)).  Plaintiffs must therefore "plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Lewis-Davis*, 2021 WL 1720235, at *14 (quoting *Chin*, 2006 WL 827343, at *9).

Plaintiff's allegations of emotional distress are scant:

> 37. As a result, Jane Doe has suffered extreme injuries, including mental and emotional harm so severe that she temporarily lost a will to eat.

> 38. Jane Doe continues to suffer mentally and emotionally.

(ECF No. 1 ¶¶ 37–38.)  With the exception of alleging that Plaintiff "temporarily lost a will to eat," the allegations are conclusory and vague.  Moreover, even with the allegation related to her will to eat, Plaintiff alleges no "facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Lewis-Davis*, 2021 WL 1720235, at *14, *supra*; *see also McDaniel v. Maryland*, No. CIV.A. RDB-10-00189, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010) (dismissing IIED claim where the plaintiff "has not set forth 'specific facts regarding the nature, intensity, and duration of the alleged emotional trauma'") (quoting *Chin*, 2006 WL 827343, at *9); *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (dismissing IIED claim where the plaintiff alleged "severe depression, anxiety, sleeplessness, headaches, and [being] sick to her stomach," but failed to allege facts related to impairment of her daily functioning).

Plaintiff fails to allege sufficient facts as to her severe emotional distress to state an IIED claim under Maryland law.  Therefore, court will grant the Officer Defendants' Motion on that basis.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, all motions are construed as motions to dismiss.  As such, County Defendants' Motion (ECF No. 23) will be granted; the County's Motion (ECF No. 24) will be granted; and Officer Defendants' Motion (ECF No. 25) will be granted in part and denied in part.[24]

For clarity, this case will proceed as follows:

| Counts | Defendants |
|---|---|
| Count I: Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983 | Officer Defendants and John Doe Defendants (official capacities) |
| Count II: Violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983 | Officer Defendants |
| Count III: Violation of Cruel and Unusual Punishment Clause of the Eighth Amendment under 42 U.S.C. § 1983 | John Doe Defendants |
| Count IV: Violation of Article 25 of the Maryland Declaration of Rights | Officer Defendants and John Doe Defendants |
| Count V: Assault and Battery | Officer Defendants; John Doe Defendants |
| Count VI: Negligent Supervision and Discipline | John Doe Defendants |

March 3, 2025                                         /s/_____
                                                              Julie R. Rubin
                                                              United States District Judge

---

[24] Defendants seek dismissal with prejudice of all of Plaintiff's claims. The court declines to dismiss any of Plaintiff's claims with prejudice.  *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").